# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

FEDERAL DEPOSIT INSURANCE )
CORPORATION, as Receiver for )
Irwin Union Bank and Trust Company, )
as Receiver for Irwin Union Bank, FSB, )
       )
       Plaintiff, )
       )
       v.        )    Case No. 1:13-cv-782-TWP-DML
       )
BRADLEY J. KIME, DUNCAN BURDETTE, )
KIM ROERIG, and MICHAEL WATERS, )
       )
       Defendants. )

## ENTRY ON MOTION TO DISMISS

This matter is before the Court on the Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted (Dkt. 25) filed by Defendants Bradley J. Kime, Duncan Burdette, Kim Roerig, and Michael Waters (collectively, "Defendants"). For the reasons set forth below, the Defendants' Motion is **DENIED**.

## I.      BACKGROUND

The Federal Deposit Insurance Corporation ("FDIC") initiated this action as Receiver for two banks—Irwin Union Bank and Trust Company and Irwin Union Bank, FSB (collectively, "the Banks"). The Defendants are identified as four officers serving the Banks between 2003 and 2009. (Dkt. 1 at ¶¶ 9–12.) The FDIC accuses the Defendants of approving 19 loans between 2005 and 2009 that cost the Banks more than $42 million in losses. (*Id.* at 1.)

Although the facts alleged are extensive, they can fairly be summarized as follows: the Defendants violated the Banks' lending policies, disregarded deficiencies in underwriting, failed

to thoroughly evaluate borrowers' credit-worthiness, and failed to heed bold warning signs of risk en route to approving loans that never were likely to be repaid. The errors alleged include, for example:

- approving loans without demanding (*id.* at ¶ 42) or appraising (*id.* at ¶ 75) collateral;

- failing to valuate borrowers' sources of income (*id.* at ¶ 57);

- lending to borrowers with speculative repayment sources (*id.* at ¶ 64);

- declining to enforce the Banks' capitalization standards (*id.* at ¶ 66);

- failing to obtain (*id.* ¶ 67) or properly review (*id.* at ¶ 93) borrowers' financial records;

- relying on incomplete credit memos from loan officers (*id.* at ¶ 82);

- advancing additional funds despite knowing that the borrowers' original loan was under-collateralized and would not be repaid (*id.* at ¶ 134); and

- lending without requiring sufficient guarantees (*id.* at ¶ 150).

The Banks failed on September 18, 2009. (*Id.* at ¶ 17.) The same day, the Indiana Department of Financial Institutions and the Office of Thrift Supervision appointed the FDIC Receiver for the Banks under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). (*Id.* at ¶ 8.) On September 17, 2012, the parties executed an agreement to toll any applicable statutes of limitations until further notice. (*See* Dkt. 21-1.) According to the FDIC, Defendant Waters terminated the Tolling Agreement on April 22, 2013. (Dkt. 35 at 17.) On May 13, 2013, the FDIC filed its complaint seeking to recover the Banks' losses under FIRREA and Indiana law on grounds of negligence, gross negligence, and breach of fiduciary duties. (Dkt. 1.)

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take the facts

alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Mosley v. Kinclair*, 947 F.2d 1338, 1339 (7th Cir. 1991). The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). Nevertheless, the statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations and quotations omitted). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth v. HSBC Bank. Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.     <u>DISCUSSION</u>

The Defendants raise three challenges to the Complaint. First, it argues that all the FDIC's claims are barred by pertinent statutes of limitation. Second, it argues that Count II must be dismissed because it fails to state a plausible claim for gross negligence. Third, it argues that Count III must be dismissed because it fails to state a plausible claim for breach of fiduciary duties, or, in the alternative, because it is duplicative of Count I. The Court addresses each argument in turn.

**A.     The Court cannot dismiss any of the FDIC's claims for failure to satisfy a statute of limitation.**

When the FDIC is appointed receiver of a financial institution, FIRREA and state law combine to determine the time within which the FDIC must initiate any litigation on the institution's behalf. "Notwithstanding any provision of any contract, the applicable statute of limitations" for a tort claim is the longer of three years from the date the claim accrued or the

period that would apply under state law.  12 U.S.C. § 1821(d)(14)(A)(ii).  For purposes of

FIRREA, the institution's cause of action accrues on the later of: (1) the date the FDIC is

appointed as receiver, or (2) the date on which the institution's cause of action accrues under

state law.  12 U.S.C. § 1821(d)(14)(B).  This provision commonly is referred to as FIRREA's

"Extender Statute."  The parties agree that the Banks' claims would be subject to two-year

statutes of limitations under Indiana law, so the most generous filing deadline would be three

years from the FDIC's appointment as allowed by the Extender Statute.

The Defendants offer alternative arguments why the statute of limitations precludes relief

for the FDIC.  First, the Defendants argue that all of the FDIC's claims are defeated because it

failed to file its Complaint within three years of its appointment as receiver, which is the longest

the statute of limitations could possibly run in this matter.  Second, the Defendants argue that,

even if the FDIC filed its Complaint within the three-year FIRREA extension, several of its

claims are barred because the Indiana statute of limitations expired before the FDIC's

appointment.

### 1. Whether FIRREA's three-year statute of limitations has been tolled by agreement is a fact-sensitive question.

According to the Complaint, the FDIC was appointed receiver for the Banks on

September 18, 2009.  (Dkt. 1 at ¶ 8.)  The FDIC filed its Complaint on May 13, 2013 – nearly

three years and eight months after its appointment.  (Dkt. 1.)  The Defendants argue that the

FDIC failed to initiate its claims within FIRREA's limitations period and that the Court therefore

must dismiss all the FDIC's claims.  (Dkt. 26 at 12.)

The FDIC argues that it filed its claims timely because of an agreement by the parties.

The parties agree that the FDIC and all four Defendants entered into a "Tolling Agreement" on

September 17, 2012 – one day before the third anniversary of the FDIC's appointment.[1] (*See* Dkt. 21-1.)  By its text, any party could terminate the Tolling Agreement at will, and the parties contracted to extend the expiration or lapse of "[a]ny and all statutes of limitations and/or repose" until 30 days after one party notified the others of termination.  (Dkt. 26-1.)  According to the FDIC, Defendant Waters issued notice of termination on April 22, 2013.  (Dkt. 35 at 17.) By filing its Complaint on May 13, 2013, the FDIC initiated its suit within the 30-day window established by the Tolling Agreement and, in its view, satisfied FIRREA's statute of limitations. (*Id.*)

The Defendants argue that FIRREA's language, "Notwithstanding any provision of any contract, the applicable statute of limitations . . . shall be . . ." invalidates tolling agreements and therefore renders the FDIC's claims untimely.  (Dkt. 26 at 12–14 (quoting 12 U.S.C. § 1821(d)(14)(A).)  The FDIC, of course, disagrees.  (Dkt. 35 at 18–23.)  It also argues, however, that the Defendants induced the FDIC to delay its claims by entering the Tolling Agreement, and that the doctrine of equitable estoppel therefore bars the Defendants from challenging the Agreement's validity under FIRREA.  (Dkt. 35 at 24–27.)

Generally, considering a statute of limitations on a motion to dismiss is inappropriate.  A statute of limitations represents an affirmative defense.  Because a plaintiff need not anticipate or allege facts that would defeat affirmative defenses, a court typically cannot dismiss a complaint for failure to satisfy a statute of limitations until summary judgment.  *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004).  However, a court may properly rule on an affirmative defense where the complaint includes all the information

---

[1] The Court acknowledges the Defendants' implications that the Tolling Agreement is not an enforceable contract (*see* Dkt. 26 at 12 n.2; Dkt. 40 at 10 n.5.) and does not find here that the Defendants are bound by it.  The enforceability of the Tolling Agreement raises a factual inquiry whose resolution is inappropriate on a motion to dismiss.

necessary to do so. *Id.* Therefore, where "the relevant dates are set forth unambiguously in the complaint," a court may reach a statute of limitations argument on a motion to dismiss. *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).

The FDIC's Complaint includes the two operative dates for addressing the statute of limitations: the date the Complaint was filed (May 13, 2013) and the date the FDIC was appointed receiver (September 18, 2009). Whether FIRREA allows parties to toll the statute of limitations by agreement is a pure question of law. If it does not, the FDIC has pled facts that would show that it its claims are untimely. If it does, the FDIC has pled facts that would allow it to avoid dismissal by the FIRREA statute of limitations at least until the Tolling Agreement's enforceability can be established at summary judgment. The Court could answer this question based on the information before it.

But the FDIC's assertion of equitable estoppel precludes the Court from resolving the statute of limitations question at this time. The federal doctrine of equitable estoppel applies to federal statutes of limitation. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Broadly, the doctrine bars a litigant from benefitting by his own wrongdoing. *See Cange v. Stotler & Co., Inc.*, 826 F.2d 581, 585 (7th Cir. 1987). In one application, it allows a plaintiff to estop a defendant from asserting the statute of limitations after taking affirmative action, for example, promising not to plead the statute of limitations, that cause the plaintiff to delay his complaint. *Cada*, 920 F.2d at 450–51. Equitable estoppel necessarily raises questions of fact.

The Defendants argue that the FDIC may not escape dismissal by virtue of equitable estoppel. The Seventh Circuit has held that, where federal statutes of limitations can be equitably estopped, statutes of repose cannot. *Id.* at 451. Whereas the former bars litigation after a certain period of time elapses following accrual of a claim, the latter bars litigation after a

definite period following a specified event. *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 930 (7th Cir. 2011). According to the Defendants, the clause "Notwithstanding any provision of any contract" indicates that Congress designed FIRREA's Extender Statute as a statute of repose prohibiting litigation more than three years after the FDIC is appointed receiver. (Dkt. 40 at 8, 10–11.)

The Court finds that two factors support treating FIRREA's Extender Statute as a statute of limitations against which equitable estoppel may be asserted. First, its plain language creates a statute of limitations: "Notwithstanding any provision of any contract, the applicable *statute of limitations* . . . shall be . . . the 3-year period beginning on the date the claim accrues." 12 U.S.C. § 1821(d)(14)(A) (emphasis added). The Court declines to find that Congress consciously distinguished between statutes of limitations and repose, intended to implement a statute of repose in FIRREA, and still dubbed the three-year extension period a "statute of limitations."

Second, so far as the Court is aware, no court ever has referred to FIRREA's Extender Statute as a statute of repose. The FDIC has collected numerous cases in which the Extender Statute is characterized as a statute of limitations. (*See* Dkt. 35 at 22 n.6.) By contrast, the Defendants cite no case referring to the Extender Statute as a statute of repose and rely on precedents from the Tenth Circuit finding that a substantially identical extender statute created a statute of repose. (Dkt. 26 at 13–14 (applying *Nat'l Credit Union Admin. Bd. v. Credit Suisse Secs. (USA) LLC*, 939 F. Supp. 2d 1113, 1125–26 (D. Kan. 2013)); Dkt. No. 40 at 8 (applying *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity, Inc.*, 727 F.3d 1246, 1256 (10th Cir. 2013).) With respect to those decisions, the Court finds the majority approach most persuasive.

Here, the FDIC raised neither the Tolling Agreement nor equitable estoppel in its Complaint. Therefore, none of the facts that would illuminate a claim of equitable estoppel – the details of the circumstances under which the parties executed the Agreement – are alleged in the

Complaint. Because the FDIC was not required to overcome affirmative defenses in its Complaint, and because the details of its equitable-estoppel response to the Defendants' statute of limitations defense are not before the Court, the Court cannot dismiss the Complaint based on the FIRREA statute of limitations even if it barred tolling agreements. In other words, the Complaint must survive because either the Tolling Agreement is valid or, if it is not, the Court cannot fairly evaluate the FDIC's equitable estoppel response at this stage. Therefore, the Court **DENIES** the Defendants' Motion insofar as it seeks dismissal of all the FDIC's claims on the basis of the FIRREA statute of limitations.

The Court cautions that it takes no position as to the enforceability of tolling agreements under the Extender Statute. To the extent the Court disagrees with the Tenth Circuit precedents advanced by the Defendants, it disagrees only to the extent that it declines to construe FIRREA's Extender Statute as a statute of repose. Whether the "Notwithstanding" Clause nevertheless bars tolling agreements presents a distinct legal question that the Court need not address until presented with a motion for summary judgment.

> **2.** **Whether any claims expired under Indiana law before the FDIC was appointed Receiver also is a factual question.**

The Defendants next argue that, the FIRREA Extender Statute aside, Indiana's statute of limitations terminated the FDIC's claims as to 15 of the 19 loans before the FDIC was appointed Receiver. The Defendants argue (and the FDIC does not dispute) that, subject to exceptions not raised here, FIRREA creates no relief for the FDIC on a cause of action that expired under state law before the FDIC's appointment. (*See* Dkt. 26 at 15 (applying 12 U.S.C. § 1821(d)(14)(C)).) In Indiana, a cause of action for negligence or breach of fiduciary duty expires two years from the date it accrues. *See* Ind. Code § 34-11-2-4(a). And, a cause of action in tort accrues when the plaintiff discovers, or in the exercise of ordinary diligence, could discover, that she has

sustained an injury caused by another person's tortious act. *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992).

The parties dispute when a cause of action for negligent lending accrues. The Defendants argue that any financial loss is incurred when the loans are approved. (Dkt. 26 at 16–18.) On this basis, the Defendants argue that the Banks' causes of action accrued on the dates the loans were approved and that the FDIC is ineligible for relief for the 15 loans approved before September 18, 2007 (two years before the FDIC's appointment). (*Id.*) The FDIC argues that no injury is discoverable until the loan fails or the lender declares a loss. (Dkt. 35 at 28.)

The Defendants correctly note that several courts have held that a cause of action for negligent lending accrues when the loan is approved. (*See* Dkt. 26 at 16–17 (collecting cases).) But none of these cases is from an Indiana court, and none applies Indiana law or a discovery rule similar to Indiana's. As the FDIC soundly notes (*see* Dkt. 35 at 29–30), these cases rest on the premise that a bank is *injured* when it parts with money through a negligently approved loan. *E.g.*, *Fed. Deposit Ins. Corp. v. Jackson*, 133 F.3d 694, 696–97 (9th Cir. 1998) (applying Arizona law). Even if true, that premise does not command the conclusion that a bank should *discover* its financial loss the moment its officers approve a loan.

Correctly noting that no Indiana court has ruled on the accrual date of a cause of action for negligent lending (Dkt. 26 at 16), the Defendants seek support from the closely related field of legal malpractice (Dkt. 40 at 13–14). [2] The Defendants direct the Court to *Shideler v. Dwyer*, in which the Indiana Supreme Court held that a cause of action for negligently drafting a will accrued when the testator died, not when the probate court found the challenged provision invalid. 417 N.E.2d 281, 285–86 (Ind. 1981). The *Shideler* court reasoned that the attorney's negligent act "became irremediable," and the plaintiff's injury therefore became final, at the

---

[2] Like the FDIC's claims here, legal malpractice entails principles of negligence and fiduciary duty.

testator's death.  *Id.* at 285.  The probate court's finding of invalidity, on the other hand, was merely "a fact that figured in the *extent* of Plaintiff's damages."  *Id.* at 286 (emphasis added).

The Court questions *Shideler*'s application to this case.  First, the Defendants' approval of the loans does not clearly analogize to the testator's death in *Shideler*.  The Defendants' approval of the loans represents their allegedly tortious act, which parallels the attorney's drafting of the will in *Shideler*.  Whether injury to the Banks was *certain* at the moment of approval is not clear under Indiana law and, in any event, strikes the Court as a fact-sensitive question not appropriately answered on a motion to dismiss.

Second, subsequent decisions cast doubt upon *Shideler's* extension to these facts.  In *Wehling*, a mortgagor sued a bank for negligently recording the deed to the property.  586 N.E.2d at 841.  When it attempted to sell the home, the mortgagor discovered that the property already had been sold at a tax sale after all tax notices failed to reach the mortgagor.  *Id.*  The Indiana Supreme Court refused summary judgment, accepting the mortgagor's argument that it could not have been aware of the bank's negligence until attempting to sell the home and learning of the tax sale.  *Id.* at 843.  In so holding, the court emphasized venerable Indiana precedents holding that a cause of action does not accrue until the plaintiff has suffered an injury *and* damages "susceptible of ascertainment."  *Id.* at 842 (quoting *Montgomery v. Crum*, 161 N.E. 251, 259 (Ind. 1928)).  It also emphasized its then-recent decision in *Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989), in which it found that a cause of action for defamation accrued when the "resultant damage was ascertained or ascertainable by due diligence," not necessarily on the date of publication.  *Wehling*, 586 N.E.2d at 842–43 (quoting *Burks*, 534 N.E.2d at 1104).  *Shideler*'s point of irremediable injury approach would have yielded different results, setting accrual at the date of the tax sale in *Wehling* and the date the plaintiff's reputation was injured in *Burks*.

Similarly, the Indiana Supreme Court explicitly declined to apply *Shideler* in *Madlem v. Arko*, 592 N.E.2d 686, 686–87 (Ind. 1992), another malpractice case. Madlem sued his attorney for negligently notarizing a promissory note with a forged signature. *Id.* at 686. "Since *Shideler*," the court began, "this Court has revisited this situation." *Id.* Quoting *Wehling*, the court characterized the plaintiff's discovery as the critical incident triggering accrual:

> In the case at bar, Madlem had no way to know of a possibly improper notarization of Mrs. Buck's signature until he tried to foreclose on the mortgage and the defense of forgery was presented. Thus, we hold that the statute of limitations did not start to run until that time.

*Id.* at 687.

The Court is persuaded that an Indiana tribunal confronted with this inquiry likely would find that the Banks would not necessarily have been expected to discover (or even suffer) an ascertainable injury simultaneous to the Defendants' approval of each loan and that the accrual date therefore is a question of fact not ripe for resolution at this stage. The Complaint does not specify when the banks incurred their injury, but the FDIC was not obligated to plead allegations that would defeat a statute of limitations defense. *Barry Aviation*, 377 F.3d at 688. Therefore, the Court must leave for summary judgment the question of when the Banks became (or should have become) aware of their injuries. Accordingly, the Court **DENIES** the Defendants' motion to the extent it asks the Court to dismiss any of the FDIC's claims as time-barred.

**B.**   **Count II of the Complaint states a plausible claim for relief under Indiana's gross negligence standard.**

The Defendants argue that Count II of the FDIC's Complaint, which accuses each Defendant of gross negligence, fails to state a plausible claim for relief. (*See* Dkt. 26 at 17–21.) The parties agree that, under FIRREA, Indiana's definition of gross negligence controls. *See* 12 U.S.C. § 1821(k). The parties further agree that the U.S. District Court for the Northern District of Indiana properly applied Indiana's standard for gross negligence in *Resolution Trust Corp. v.*

*O'Bear, Overholser, Smith & Huffer*, 840 F. Supp. 1270 (N.D. Ind. 1993). To state a claim for gross negligence, the plaintiff must allege that the defendant, "in the face of a manifest duty, acted with reckless disregard for the consequences." *Id.* at 1279. "To the extent Indiana law requires 'intent,'" a court may "infer the requisite intent upon [the plaintiff's] showing that the defendants' actions were 'plainly negligent.'" *Id.* (quoting *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1263 (Ind. Ct. App. 1986)). The Court finds this application consistent with subsequent precedent from the Indiana Supreme Court. *See N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003) (defining gross negligence as "'[a] conscious voluntary act or omission in reckless disregard of . . . the consequences to another party'" (quoting Black's Law Dictionary 1057 (7th ed. 1999)).

Under that standard, the FDIC has articulated a plausible claim for relief in Count II. The Complaint clearly defines the duty the FDIC accuses the Defendants of recklessly disregarding:

A. To inform themselves about proposed loans and the risks the loans pose to the Banks before they approved them;

B. To approve loans that conformed with the Banks' Loan Policy;

C. To ensure that any loans they approved were underwritten in a safe and sound manner;

D. To ensure that any loans they approved were secured by sufficiently valuable collateral to prevent or minimize the risk of loss to the Banks; and

E. To ensure that any loans they approved did not violate applicable banking regulations and/or create unsafe and unsound concentrations of credit.

(*See* Dkt. 1 at ¶ 182.)

The Complaint also describes how the Defendants breached that duty, generally in its articulation of Count II (*see id.* at ¶¶ 183–85) and specifically in its explication of the Defendants' conduct as to each loan (*see id.* at ¶¶ 41–170). These descriptions set forth a

plausible claim that the Defendants acted with reckless disregard for that duty. For example, the FDIC has accused the Defendants of approving loans without demanding collateral (*id.* at ¶ 42), valuating borrowers' sources of income (*e.g.*, *id.* at ¶ 57), or properly reviewing borrowers' financial records (*e.g.*, *id.* at ¶¶ 93).[3] These allegations by no means prove a conscious and reckless breach of the duty the FDIC raises, but they convince the Court that the FDIC could plausibly prove gross negligence at trial.

The Court must reject the Defendants' argument that the Complaint fails to "provide each defendant with adequate notice of his alleged conduct giving rise to the claim." (Dkt. 26 at 19–20.) The FDIC might have presented its claims defendant-by-defendant or loan-by-loan, but the superiority of one of those methods is a question of individual preference and would not justify dismissing the Complaint. The Complaint clearly identifies which Defendants are accused of participating in the approval of which loans. (*See* Dkt. 1 at ¶ 38.) It also explains with specificity what tortious conduct is alleged as to each individual loan. (*See id.* at ¶¶ 41–170.) The Complaint does not set forth every fact that ultimately will be presented to the trier of fact, but it need not do so. The Complaint presents each Defendant with pictures of the allegations against him and his potential liability sufficient to allow him to prepare a defense. It also articulates, with respect to each loan, a plausible claim for gross negligence.

The Court also must reject the Defendants' argument that Count II should be dismissed because the FDIC's allegations "are based on a fundamental misunderstanding of acceptable real estate lending practices and hold each of the Defendants liable as an 'insurer' for each Loan transaction." (*See* Dkt. 26 at 20–21.) First, the Defendants directly challenge only one of the many forms of malfeasance (securing loans with undeveloped real estate) raised by the FDIC.

---

[3] The Defendants have not identified any specific deficiency in the FDIC's allegations. Lacking specific guidance, the Court finds the FDIC's allegations sufficient to state a plausible claim for recovery.

(*See id.* at 21.)  Second, what constitutes an "acceptable real estate lending practice" strikes the Court as (at least in part) a fact-sensitive question requiring further development and not amenable to resolution based on one paragraph in the Defendants' brief on this motion.[4]  Finally, whether a bank may hold its officers liable as insurers of their loans is immaterial to resolving this motion.  The FDIC has not raised any argument to that effect in the Complaint or in its brief on this motion.  Instead, the FDIC has accused the Defendants of consciously and recklessly disregarding the Banks' policies, principles of due diligence, and red flags suggesting inability to repay the loans they approved.  The FDIC has proffered allegations that plausibly entitle it to relief on that theory, so the Court **DENIES** the Defendants' motion to the extent it asks the Court to dismiss Count II of the Complaint.

**C.  Count III of the Complaint states a plausible claim for breach of fiduciary duties.**

The Defendants next contest Count III of the Complaint, which alleges breach of fiduciary duty, on two grounds.  First, the Defendants argue that the FDIC has failed to plead all the elements of a cause of action for breach of fiduciary duty.  Second, the Defendants argue that, even if it is properly pled, Count III must be dismissed because it is duplicative of Count II.

**1.  The Complaint covers all the elements of breach of fiduciary duty.**

The parties agree that, to articulate a claim for breach of a fiduciary duty, a plaintiff must allege "three elements:  (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *York v. Fredrick*, 947 N.E.2d 969, 978 (Ind. App. 2011).  The Defendants also argue that a plaintiff must go further and accuse the defendant of improperly influencing the beneficiary "so as to obtain an unconscionable advantage." *Grace Vill. Health Care Facilities, Inc. v. Lancaster & Pollard Co.*,

---

[4] This is especially true considering the FDIC has accused the Defendants of lending in violation of the Banks' own standards—standards the Banks were required to implement by the very federal regulations upon which the Defendants rest here.  (*See* Dkt. 36 at 21 (citing 12 C.F.R. § 365, App. A).)

896 F. Supp. 2d 757, 768 (N.D. Ind. 2012). The Defendants ask the Court to dismiss Count III for failure to satisfy the "unconscious advantage" rule. (Dkt. 26 at 25–26.)

The Court finds that the "unconscionable advantage" rule advanced by the Defendants does not apply to this case. Here, the FDIC accuses bank *officers* of breaching their fiduciary duties to the *bank*. The cases the Defendants cite, including *Grace Village* and all the cases upon which it relies, address a question not relevant here: under what circumstances a *bank* owes fiduciary duties to its *customers*. *See Grace Village*, 896 F. Supp. 2d at 760 (applying *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1047 (Ind. Ct. App. 2003); *Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 419 (Ind. Ct. App. 2002); *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998)). The Court is not aware of, and the Defendants have not offered, any authority applying the "unconscionable advantage" rule in any other context.

Officers and employees owe fiduciary duties to their employers. *E.g.*, *Marwil v. Grubbs*, No. 1:03-cv-1165-DFH-VS, 2004 WL 2278751 at *7 (S.D. Ind. Sept. 30, 2004); *Kopka, Landau & Pinkus v. Hansen*, 874 N.E.2d 1065, 1070 (Ind Ct. App. 2007). The Complaint identifies the Defendants as officers of the Banks (Dkt. 1 at ¶¶ 1, 2, 9–11), and describes with particularity the duties the Defendants owed the Banks (*id.* at ¶ 188), how the Defendants breached those duties (*id.* at ¶¶ 41–170, 189), and what harm the Banks suffered as a result (*id.* at ¶¶ 50, 60, 70, 78, 87, 96, 106, 116, 136, 144, 155, 163, 170, 191). In short, the Complaint addresses each of the three elements the parties agree constitute a claim for breach of fiduciary duty, and the Court finds no basis on which to dismiss Count III for failure to satisfy the "unconscionable advantage" rule.

### 2. The Court construes the Complaint as pleading three alternative causes of action.

The Defendants finally urge the Court to dismiss Count III as duplicative of Count I. According to the Defendants, Counts I and III describe the same set of facts as producing the

same injury. (Dkt. 26 at 24–25.) Under Indiana law, a party cannot recover for the same injury under two causes of action. *INS Investigations Bureau, Inc. v. Large*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003). And, although the Defendants acknowledge that a litigant may plead alternative causes of action, the Defendants maintain that the Complaint does not adequately announce an alternative pleading. (Dkt. 26 at 23–25.) Therefore, the Defendants move the Court to dismiss Count III either for failing to state a claim upon which relief may be granted (under Federal Rule of Civil Procedure 12(b)(6)) or for redundancy (under Rule 12(f)).[5]

Although a plaintiff "must use a formulation from which [her intent] can reasonably be inferred," she "need not use particular words to plead in the alternative." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000). The FDIC seeks the same damages through each of Counts I, II, and III, and in total. (*See* Dkt. I at ¶¶ 179, 186, 191, and "Request for Relief" at p. 57.) Although the FDIC did not use the word "alternative" in its Complaint, this structure suggests an intent to plead in the alternative, especially in light of the rule against double recovery. Moreover, the FDIC has clarified in its brief on this motion that it has alleged three alternative theories of liability. (Dkt. 35 at 44 n. 16.) Therefore, the Court construes the Complaint as pleading Counts I, II, and III in the alternative and **DENIES** the Defendants' motion to the extent it asks the Court to dismiss Count III.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. 25) is **DENIED**.

SO ORDERED.

Date:  _03/28/2014_

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[5] Although the Defendants' motion invokes only Rule 12(b)(6) (*see* Dkt. 25), the operative portion of its brief raises Rule 12(f) (*see* Dkt. 26 at 24–26). Although it has not clearly done so in its filings, the Court infers that the Defendants seek to have Count III dismissed under Rule 12(b)(6) or, in the alternative, stricken under Rule 12(f).

DISTRIBUTION:

<div style="display: flex;">

Bryon E. Leet
WYATT TARRANT & COMBS LLP
bleet@wyattfirm.com

Robert E. Craddock, Jr.
WYATT TARRANT & COMBS LLP
rcraddock@wyattfirm.com

Sara Veeneman
WYATT TARRANT & COMBS LLP
sveeneman@wyattfirm.com

John W. Woodard, Jr.
WYATT TARRANT & COMBS LLP
jwoodard@wyattfirm.com

James A. Knauer
KROGER GARDIS & REGAS, LLP
jak@kgrlaw.com

Kevin D. Koons
KROGER GARDIS & REGAS, LLP
kdk@kgrlaw.com

Steven E. Runyan
KROGER GARDIS & REGAS, LLP
ser@kgrlaw.com

Linda C. McFee
McDOWELL RICE SMITH &
BUCHANAN
lmcfee@mcdowellrice.com

R. Pete Smith
McDOWELL RICE SMITH &
BUCHANAN
petesmith@mcdowellrice.com

Jennifer M. McHugh
COZEN O'CONNOR
jmchugh@cozen.com

Kevin R. Stolworthy
ARMSTRONG TEASDALE, LLP
kstolworthy@armstrongteasdale.com

Tracy A. DiFillipo
ARMSTRONG TEASDALE, LLP
tdifillippo@armstrongteasdale.com

</div>